No. 26-1635

_____

# UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

_____

BAS, LLC,

Plaintiff–Appellant,

v.

TOMMY LAND,

Defendant–Appellee.

_____

On Appeal from the
United States District Court
for the Eastern District of Arkansas
Civil Action No.: 3:25-cv-00224-BSM

_____

## ADDENDUM

_____

ROBERT H. THOMAS
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
(916) 419-7111
RThomas@pacificlegal.org

*Counsel for Plaintiff-Appellant*

Appellate Case: 26-1635    Page: 1    Date Filed: 05/19/2026 Entry ID: 5641429

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**BAS, LLC**                                                                          **PLAINTIFF**

**v.**                          **CASE NO: 3:25-cv-00224-BSM**

**TOMMY LAND,** in his capacity as
Arkansas Commissioner of State Lands                          **DEFENDANT**

## ORDER

Tommy Land's motion to dismiss [Doc. No. 6] is granted.  BAS LLC's claims are dismissed with prejudice.

## I.  BACKGROUND

BAS owned property in Greene County, Arkansas.  Compl. ¶¶ 4 and 11, Doc. No. 1. On July 1, 2020, the Greene County clerk certified the property for non-payment of real estate taxes.  *Id*. ¶ 20.  On August 17, 2021, Commissioner of State Lands, Tommy Land, sent a notice of delinquency and future tax sale via certified mail, with return receipt requested, to BAS at its address noted on the property's title.  *Id*. ¶¶ 15, 25, 27.  Although that address was no longer associated with BAS, it was never changed on the title.  *Id*. ¶¶ 13–18.  Land never received a return receipt, but he saw the electronic data stating that the package was delivered to a "front desk, reception area, or mail room," despite the property having none of these.  *Id*. ¶¶ 37, 40, 41.  On June 27, 2022, Land sent another notice by certified mail, this time to the property's physical address, which was returned undelivered. *Id*. ¶¶ 48, 50.  BAS owed $32,699.73 and the property was sold for $26,654.78.  Compl. ¶¶ 56, 60. Greene County records value the property at $718,000.  *Id*. ¶ 57.

BAS filed a lawsuit in Greene County against Land under section 1983 for Fifth and Fourteenth Amendment due process violations; a Fifth Amendment Takings Clause claim; and violations of the Takings Clause under Article 2 of the Arkansas Constitution. *Id*. ¶¶ 68, 70, Ex. 13.  Land filed a motion for summary judgment claiming sovereign immunity. *Id*. ¶¶ 69, 71. The Greene County Circuit Court denied the motion because there was a fact dispute. *Id*. ¶ 72.  Land filed an interlocutory appeal and the Arkansas Supreme Court reversed the decision holding that there was not a factual dispute and that sovereign immunity applied.  *Id*. ¶¶ 73–74, 79.  Accordingly, the Circuit Court entered an order granting summary judgment and dismissing the claims against Land with prejudice.  *BAS, LLC v. AR Commissioner of State Lands*, Case No. 28CV-22-388.

BAS is now suing Land under section 1983 for (1) Fifth and Fourteenth Amendment due process violations; (2)  Eighth Amendment excessive fines violations; (3) violations of the Fifth Amendment Takings Clause; and (4) violations of the Takings Clause under Article 2 of the Arkansas Constitution.  Compl. ¶ 5.  Land moves to dismiss all claims.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the plaintiff fails to state a claim upon which relief may be granted.  To meet the 12(b)(6) standard, a complaint must allege sufficient facts that state a plausible claim of relief to which the plaintiff may be entitled.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Although detailed factual allegations are not required, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient.  *Id.*  In ruling on a 12(b)(6) motion

Appellate Case: 26-1635    Page: 3    Date Filed: 05/19/2026 Entry ID: 5641429

to dismiss, materials embraced by the pleadings, as well as exhibits attached to the pleadings and matters of public record, may all be considered. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

## III.  DISCUSSION

### A.  <u>*Rooker-Feldman* Doctrine</u>

The *Rooker-Feldman* doctrine is not applicable because BAS is not "'complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments.'" *Riehm v. Engelking*, 538 F.3d 952, 964 (8th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)).  Rather, BAS is reasserting the same claims in a different court.

### B.  <u>Preclusion</u>

Land's motion to dismiss based on preclusion is granted.  Claim preclusion bars relitigation if (1) the first suit concluded with a final judgment on the merits; (2) the previous court had proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Scott v. City of Sherwood, Arkansas*, 94 F.4th 778, 780 (8th Cir. 2024).

The Greene County Circuit Court had proper jurisdiction over the previous case that involved the same parties.  BAS's argument that there was not a final judgment on the merits is well taken, but despite the fact that "sovereign immunity certainly has jurisdictional qualities, [the Arkansas Supreme Court] historically has treated it like an affirmative defense." *Walther v. FLIS Enters., Inc.*, 540 S.W.3d 264, 267 (Ark. 2018).  One method for

overcoming the sovereign immunity defense is by proving a violation of a constitutional right.  *See Osage Creek Cultivation, LLC v. Arkansas Dep't of Fin. & Admin.*, 660 S.W.3d 843, 847 (Ark. 2023). The Arkansas Supreme Court granted summary judgment on BAS's claims because Land did not violate BAS's constitutional rights, thus, sovereign immunity applied.  *See Land v. BAS, LLC*, 713 S.W.3d 1, 5 (Ark. 2025), reh'g denied (Sept. 4, 2025); *see also Scott*, 94 F.4th at 780–781 (res judicata applied because a dismissal with prejudice based on sovereign immunity was a final judgment on the merits).

The first suit was fully contested and briefed at the motion for summary judgment stage.  The Arkansas Supreme Court analyzed BAS's due process and takings claims and established that they did not have merit and could not overcome a sovereign immunity defense.  *Land*, 713 S.W.3d at 11.  Finally, BAS asserts the same claims as it did in the previous case, along with a new Eighth Amendment excessive fines claim. The Eighth Amendment claim is also precluded because it arises from the same events as the previous lawsuit and could have been brought then.  *See Faigin v. Diamante Members Club, Inc.*, 653 S.W.3d 383, 388 (Ark. Ct. App. 2022) (when a case is based on the same events as a previous lawsuit, res judicata applies even if the subsequent lawsuit raises new legal issues) Thus, BAS's claims are precluded.

BAS's claims are also barred pursuant to issue preclusion. Issue preclusion bars relitigating claims when (1) the issue sought to be precluded in the second suit is the same as the first suit; (2) the issue was litigated in the first suit; (3) the issue was determined by a valid and final judgment in the first suit; and (4) the determination of that issue was

essential to the judgment. *Scott*, 94 F.4th at 780. BAS seeks to relitigate the issue of whether Land violated BAS's right to be free from illegal takings and right to due process. The Arkansas Supreme Court decided that there was not a constitutional violation, which was essential to the determination that sovereign immunity applied. *Land*, 713 S.W.3d at 12–13. Accordingly, BAS's claims were dismissed with prejudice. *Nat'l Bank of Com. v. Dow Chem. Co.*, 1 S.W.3d 443, 447 (Ark. 1999) ("order granting summary judgment is a final adjudication on the merits"). Since these issues have already been fully litigated, they are barred.

## IV. CONCLUSION

For these reasons, Land's motion to dismiss is granted. BAS's claims are dismissed with prejudice.

IT IS SO ORDERED this 9th day of March, 2026.

_____
UNITED STATES DISTRICT JUDGE

5

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**BAS, LLC**                                                                     **PLAINTIFF**

**v.**                                   **CASE NO: 3:25-cv-00224-BSM**

**TOMMY LAND,** in his capacity as
Arkansas Commissioner of State Lands                           **DEFENDANT**

**JUDGMENT**

Consistent with the order entered today, this case is dismissed with prejudice.

IT IS SO ORDERED this 9th day of March, 2026.

_____
UNITED STATES DISTRICT JUDGE

# SUPREME COURT OF ARKANSAS
No. CV-24-645

| | |
|---|---|
| TOMMY LAND, IN HIS CAPACITY AS COMMISSIONER OF STATE LANDS FOR THE STATE OF ARKANSAS <br><br> APPELLANT <br><br> V. <br><br> BAS, LLC; PARCEL STRATEGIES, LLC; AND BANYAN CAPITAL INVESTMENTS, LLC <br><br> APPELLEES | Opinion Delivered: June 5, 2025 <br><br> APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28CV-22-388] <br><br> HONORABLE RICHARD LUSBY, JUDGE <br><br> REVERSED. |

NICHOLAS J. BRONNI, Associate Justice

This case is about whether the Commissioner of State Lands provided constitutionally adequate notice to BAS, a California LLC, before selling its Arkansas property to recover delinquent property taxes. Because the undisputed facts show that the Commissioner's notice to BAS was constitutionally sufficient, BAS fails to raise a valid claim and sovereign immunity applies. We reverse.

I. *Facts and Procedural Background*

In October 2016, BAS purchased commercial property in Paragould, Arkansas. The property's deed listed BAS's mailing address as 3735 Winford Drive, Tarzana, California. Although Gary Solnit, one of BAS's two members, temporarily resided at that address, BAS conducted its business operations from a different location in Beverly Hills, California. Solnit asked the title company to change the deed to reflect the Beverly Hills address, but

that change was never made. BAS also failed to register its mailing address with the county as required by state law. *See* Ark. Code Ann. § 26-35-705.

After BAS failed to pay its property taxes in 2017 and 2018, the Greene County Clerk certified the property to the Commissioner of State Lands for nonpayment. As required by statute, the Commissioner attempted to notify BAS of the upcoming tax sale and inform it of its right to redeem the property. On August 17, 2021, the Commissioner sent certified mail to BAS at 3735 Winford Drive in Tarzana, California—"the owner's last known address." Ark. Code Ann. § 26-37-301. Although certified mail typically requires a signature to complete delivery, the United States Postal Service temporarily relaxed that requirement during the COVID-19 pandemic. The Commissioner also requested a return receipt of the recipient's signature, even though the statute does not require one.

For reasons unknown, the Commissioner never received that physical return receipt. But using the USPS tracking data, the Commissioner verified that the notice had been "[d]elivered" to a front desk, reception area, or mailroom in Tarzana at 1:02 p.m. on August 24, 2021. Having no reason to question that data, the Commissioner did not investigate to determine whether 3735 Winford Drive had any such facilities. In June 2022, the Commissioner sent an additional notice by certified mail directly to the Paragould property itself. That notice was returned undelivered.

Receiving no response from BAS, the Commissioner proceeded with the sale. On August 2, 2022, third parties purchased the property. Two months later, those purchasers filed an action to quiet title on the property. In response, BAS timely filed this lawsuit against the Commissioner, in his official capacity, contesting the validity of the tax sale. *See*

2

Ark. Code Ann. § 26-37-203 (in general, "an action to contest the validity of a [tax delinquency sale]" must be "commenced within ninety (90) days after the date of conveyance"). BAS sought an injunction requiring the Commissioner to set aside the sale. *See* Ark. Code Ann. § 26-37-204 (the Commissioner "shall" set aside a tax sale if the "interested parties did not receive the required notice"). BAS's complaint alleged that the Commissioner violated its due process rights under both the federal and state constitutions when he conducted the sale without providing proper notice. It also claimed that the sale constituted an unlawful taking under both the Fifth Amendment and the Arkansas Constitution for the same reason.

The Commissioner moved for summary judgment, asserting that sovereign immunity barred BAS's claims. The circuit court denied that motion because it found that genuine issues of material fact remained concerning whether the Commissioner had violated BAS's due process rights. That, it held, prevented it from determining whether BAS's claim for injunctive relief fell within the recognized exception to sovereign immunity for illegal or unconstitutional acts. The Commissioner filed an interlocutory appeal. *See* Ark. R. App. P.–Civ 2(a)(10).

## II. *Discussion*

The Commissioner appeals the denial of his motion for summary judgment based on sovereign immunity. Summary judgment is appropriate only when no material dispute of fact remains and the moving party is entitled to judgment as a matter of law. *Gates v. Hudson,* 2025 Ark. 48, at 4–5, ___ S.W.3d ___, ___. We review decisions granting or denying summary judgment de novo. *See id.* at 5, ___ S.W.3d at ___; *Ark. Cmty. Corr.*

3

Appellate Case: 26-1635    Page: 10    Date Filed: 05/19/2026 Entry ID: 5641429

*v. Barnes*, 2018 Ark. 122, at 2, 542 S.W.3d 841, 842. Applying that standard, we reverse the circuit court's decision denying the Commissioner's motion for summary judgment.

## A. Sovereign Immunity

We begin with first principles. Our constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. art. 5, § 20. That provision bars actions both against the State itself and "against a state official in his or her official capacity." *Ark. Dep't of Fin. & Admin. v. Lewis*, 2021 Ark. 213, at 3, 633 S.W.3d 767, 770. An official-capacity suit is "a suit against that official's office and is [consequently] no different than a suit against the State itself." *Id.* at 3, 633 S.W.3d at 770; *see also Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 5, 535 S.W.3d 616, 619 ("A suit against the State is barred."). Indeed, by definition, an official-capacity suit seeks to "control the actions of the State or subject it to liability" via its officers. *Lewis*, 2021 Ark. 213, at 3, 633 S.W.3d at 770; *Hutchinson v. Armstrong*, 2022 Ark. 59, at 10, 640 S.W.3d 395, 400 (Womack, J., dissenting) ("[S]overeign immunity [applies] to state employees sued in their official capacities.").

That bar, however, is not absolute. We have recognized an exception for "lawsuits seeking declaratory or injunctive relief against state officials committing ultra vires, unconstitutional, or illegal acts." *Osage Creek Cultivation, LLC v. Ark. Dep't of Fin. & Admin.*, 2023 Ark. 47, at 6, 660 S.W.3d 843, 847. That exception is narrow and applies only when a plaintiff asserts a valid claim that identifies an illegal or unconstitutional act. *See Brizendine v. Dep't of Hum. Servs.*, 2025 Ark. 34, at 3, 708 S.W.3d 351, 353 ("A plaintiff seeking to surmount sovereign immunity under this exception is not exempt from

4

complying with our fact-pleading requirements."); *Lewis*, 2021 Ark. 213, at 4, 633 S.W.3d at 770 (similar).

Consistent with that limitation, we have held that to avoid dismissal on sovereign immunity grounds, a plaintiff alleging a due process violation must "plead facts that, if proven, would demonstrate a due process violation that she can argue was an illegal or unconstitutional act sufficient to avoid sovereign immunity." *Williams v. McCoy*, 2018 Ark. 17, at 4, 535 S.W.3d 266, 269. When a plaintiff fails to do so, sovereign immunity applies and an official-capacity defendant is entitled to summary judgment. *See Chaney v. Union Producing, LLC*, 2020 Ark. 388, at 7, 611 S.W.3d 482, 487. That rule is particularly relevant here, and it is with that rule in mind that we turn to BAS's substantive claims.

## B. Due Process

The trial court concluded that a genuine dispute of material fact exists about whether the Commissioner's attempt to notify BAS was reasonable, making it unclear whether an exception to sovereign immunity applies. We disagree. Instead, we conclude the facts about the Commissioner's efforts are undisputed and that, as a matter of law, the Commissioner's efforts satisfied due process. BAS has therefore failed to allege an illegal or unconstitutional act that would overcome sovereign immunity, and the Commissioner is entitled to summary judgment.

1. The Due Process Clause of the Fourteenth Amendment prohibits states "from depriving any person of property 'without due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); U.S. Const. amend. 14, § 1. As relevant here, that requires states to provide property owners "'notice and an opportunity to be heard'" before a

5

property can be sold for nonpayment of taxes. *Dusenbery*, 534 U.S. at 167 (quoting *United States v. Jones Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)); *accord Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R. Co.*, 661 F.3d 354, 357–58 (8th Cir. 2011). But "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (citing *Dusenbery*, 534 U.S. at 170). Nor does it require Herculean "or heroic efforts" to notify owners. *Dusenbery*, 534 U.S. at 170–71; *accord Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). "Rather," the Supreme Court has explained, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314).

Reflecting that standard, the Supreme Court has also made clear that the government may not rely on an attempted notice that it knows or "had good reason to suspect" has failed. *Id.* at 230. So, for instance, while "mailed notice of a pending tax sale" is generally "constitutionally sufficient," *Dusenbery*, 534 U.S. at 170, that is not the case "when the government becomes aware prior to the taking that its attempt at notice has failed." *Jones*, 547 U.S. at 227; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) (where the relevant party's "name and address are reasonably ascertainable[,]" mailed notice is virtually "certain to ensure actual notice"). Instead, as in *Jones*, when a mailed notice is returned undelivered and the government knows the owner is "no better off than if the notice had never been sent," the government is required to "take further reasonable steps if

6

Appellate Case: 26-1635   Page: 13   Date Filed: 05/19/2026 Entry ID: 5641429

any [are] available." *Jones*, 547 U.S. at 230 (quoting *Malone v. Robinson*, 614 A.2d 33, 37 (D.C. 1992)). Indeed, due process requires the government to do what a reasonable person would do before taking and selling an owner's property—and taking "no further action is not what someone 'desirous of actually informing' [the owner] would do." *Id.*

2.    Applying that standard here, the undisputed facts demonstrate that the Commissioner did not violate BAS's due process rights when it took and sold the Paragould property for nonpayment of taxes. The circuit court erred in concluding otherwise.

Start with the circuit court's conclusion that a genuine dispute of material facts precluded summary judgment. It did not identify any such disputes, and on this record, even viewing the evidence in the light most favorable to BAS, we are unable to identify any. On the contrary, the record demonstrates and the parties agree that: (1) in August 2021, the Commissioner sent a notice via certified mail, return receipt requested, to the Tarzana address on the Paragould property deed; (2) BAS did not conduct business at that address, but one of its members had previously resided there; (3) the Commissioner never received a physical return receipt; (4) the Commissioner obtained USPS tracking data indicating that the notice had been delivered to a front desk, reception area, or mailroom at the Tarzana address; and (5) the Commissioner did not know or investigate whether the Tarzana address has such an area.

Given that, as best as we can tell, the circuit court appears to have concluded—not that factual disputes remained but—that the parties disputed whether the facts showed a due process violation. But whether those facts add up to a due process violation is a legal question that does not preclude summary judgment. *See Stauch v. City of Columbia*

7

*Heights*, 212 F.3d 425, 431 (8th Cir. 2000) ("[D]ue process is a question of law for the court to determine."); *see also Norton v. Hinson*, 337 Ark. 487, 490, 989 S.W.2d 535, 536 (1999) ("[S]ummary judgment . . . [does] not involve any factual findings."). The circuit court erred in suggesting otherwise.

Next, the merits. Accepting, as we must, those undisputed facts as true, we conclude that the Commissioner's August 2021 mailing was "reasonably calculated to reach the intended recipient" and inform it of an upcoming tax sale. *Jones*, 547 U.S. at 226. That notice was sent via certified mail to the property owner's last known address in Tarzana. The Commissioner had identified that address using BAS's recorded deed; he did so because BAS had violated state law by failing to register its mailing address with the county. Nothing in the record suggests the Commissioner knew—or had any reason to suspect—the Tarzana address was not accurate and up to date. Against that backdrop, BAS does not seriously dispute the reasonableness of that attempt to provide notice and that, if that is all we knew, the Commissioner's effort would satisfy due process. Nor could it. *Cf. Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) ("the State *knew* that appellant was not at the address to which the notice was mailed" (emphasis added)).

BAS claims instead that, as in *Jones*, subsequent facts and circumstances should have alerted the Commissioner that his mailing had failed and that he needed to take additional steps to notify BAS of the tax sale. In particular, BAS argues that the lack of a physical return receipt and absence of a mailroom at the Tarzana address should have alerted the Commissioner that there was a problem. That argument badly misses the mark.

8

Consider the missing receipt. BAS's argument wrongly conflates not receiving a physical, signed returned receipt with a notice being returned undelivered. The two are not equivalent. Returned mail has not been delivered, and "when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so." *Jones*, 547 U.S. at 230. By contrast, a missing return receipt does not show that notice failed—it merely shows the receipt has not been returned. That could be true because the receipt, as opposed to the notice itself, has gone awry. So at worst, the lack of a return receipt arguably raises a question about delivery. And if the Commissioner had failed to follow up, there might very well have been a due process problem here.

But that is not the case. Rather, the record demonstrates that, lacking a return receipt, the Commissioner examined USPS tracking data and confirmed the notice "was delivered to the front desk, reception area, or mail room at 1:02 pm on August 24, in Tarzana, CA 91356." Hence, far from neglecting the issue, the Commissioner did what anyone in his situation would have done: he checked the presumptively reliable tracking data. BAS does not really dispute that.

Instead, faced with that reasonable effort, BAS attempts to shift the inquiry and argues that the Commissioner was required to take another step and verify that the Tarzana address had a front desk, reception area, or mail room. As BAS sees it, if the Commissioner had expanded his investigation, he would have known the Tarzana address was a residential address without any such facilities, and this would have prompted him to reattempt notice. Yet BAS never explains why the Commissioner should have second-guessed the USPS tracking data. Nor does the record reveal any facts that would give him a reason to do so.

9

As a result, BAS's attempt to analogize this case to *Jones*, where the State knew the notice had failed, falls flat. *See Jones*, 547 U.S. at 234 ("What [additional] steps are reasonable in response to the new information depends upon what the new information reveals.").

To be sure, the Commissioner could have done more here. He could have used Google Street View to investigate the Tarzana address and that might, as BAS argues, have prompted him to question whether what appears to be a residential address has a front desk, reception area, or mail room. He could have sent more than one mailing, including regular mail, to the same address. *See id.* at 235. He could have posted notice on the property, especially since his decision to mail notice to the property itself was returned undelivered.[1] *Id.* He could have conducted "[a]n open-ended search for a new address," *id.* at 236, or contacted the California Secretary of State to obtain an alternative address for BAS. That is what the third-party purchasers in the companion quiet-title case did, and BAS's actual notice of that action suggests that would have been a better approach.

But it is not for us to decide whether the process could have been better as the constitution does not require the state to employ every conceivable means to provide notice. *See Dusenbery*, 534 U.S. at 170. Nor would such an approach be practical since there will always be something else the government *could* have done. Rather, due process requires the government to act "as one desirous of actually informing" the property owner of the impending tax sale. *Mullane*, 339 U.S. at 315. And faced with USPS tracking data indicating that the Commissioner's notice had been delivered, we cannot say that due

---

[1] BAS does not argue that the return of the June 2022 mailing required the Commissioner to take additional steps. It merely argues that second mailing itself was not a reasonable additional step.

10

process required the Commissioner to do more or that his efforts were a mere "gesture." *Id.*

Ultimately, while due process requires a fact-intensive analysis to determine whether notice was reasonable "under all the circumstances," *id.* at 314, BAS was still required to identify facts demonstrating that the Commissioner acted unreasonably. It has not done so. We conclude that the August 2021 notice was "reasonably certain to inform" BAS of the tax sale. *Jones,* 547 U.S. at 226. The Commissioner therefore did not violate BAS's due process rights, and BAS's claims premised on such a violation fail as a matter of law. Thus, on this record, BAS has failed to plead an unconstitutional or illegal act that would overcome sovereign immunity, and the circuit court should have granted the Commissioner's motion for summary judgment.

## C. Takings Claim

BAS's attempt to recast its due process claim as a takings claim does not alter the analysis. BAS's takings claims rely on the argument that—under *Jones*—a tax sale without proper notice constitutes a taking under both the Fifth Amendment and the Arkansas Constitution. *See* Oral Argument at 37:20 https://arkansas-sc.granicus.com/MediaPlayer.php?view_id=4&clip_id=1700 (May 8, 2025), archived at https://perma.cc/9VA6-PHXA. *Land . v. BAS,* 2025 Ark. ___ (No. CV-24-645). Even assuming BAS's characterization of *Jones* is correct, that would not help BAS. On the contrary, those claims too would fail as a matter of law because the undisputed facts establish that the Commissioner provided BAS with adequate notice before conducting the tax sale. *See*

11

*supra* at ___. So as above, those claims do not establish an illegal act that allows BAS to overcome sovereign immunity.

Yet that is hardly the only problem with BAS's argument. Rather, it fails for an even more fundamental reason: *Jones* involved a procedural due process claim—not a takings claim. While *Jones* does say that notice is required "[b]efore a State may take property," 547 U.S. at 223, it did not use the term "take" in the manner contemplated by either the Fifth Amendment or article 2, section 22 of the Arkansas Constitution. Nor could it since tax sales represent a "mandated 'contribution from individuals . . . for the support of the government . . . for which they receive compensation in the protection which government affords.'" *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 637 (2023) (quoting *County of Mobile v. Kimball*, 102 U.S. 691, 703 (1881)) (alterations in original).

That makes sense because takings clauses are "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* at 647 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)); *accord Bagley v. Castile*, 42 Ark. 77, 85 (1883) ("[T]he forfeiture and sale of lands by summary process, for the purpose of enforcing the payment of taxes, have not been considered by most courts as that deprivation of property which our and similar constitutions meant to prohibit."). A tax sale does the opposite; it ensures individuals do not avoid their share of the public burden. *See Bagley*, 42 Ark. at 85 ("The twenty-second section simply regards the exercise of the right of eminent domain, which is something wholly different in nature from the taxing power.").

12

We therefore hold that BAS's attempt to recast its due process claim as a takings claim likewise fails as a matter of law; it has failed to allege or offer evidence of an unconstitutional or illegal act that would overcome sovereign immunity; and the Commissioner is entitled to summary judgment.

### D. Supremacy Clause Claim

One loose end remains. Recognizing the weakness of its claims on the merits, BAS tries to sidestep the sovereign immunity issue altogether. It suggests that—whatever our constitution says—the federal Supremacy Clause requires us to review his federal claims. That argument, which BAS does not fully develop in its briefing, fares no better than its other arguments.

Begin with basic principles. As *Alden v. Maine* explains, "history, practice, precedent, and the structure of the Constitution" establish that "[s]tates retain immunity from private suit in their own courts." 527 U.S. 706, 754 (1999). Indeed, as the ratification debates demonstrate, a state's "right to assert immunity from suit in its own courts was a principle so well established that no one conceived it would be altered by the new Constitution." *Id.* at 741. And had the states not "retain[ed] a constitutional immunity from suit in their own courts, the need for the *Ex parte Young* rule would have been less pressing, and the rule would not have formed so essential a part of [the federal] sovereign immunity doctrine. [*Ex parte Young*, 209 U.S. 123 (1908)]." *Id.* at 748.

To be sure, the Supreme Court has recognized narrow exceptions to the general rule—like where "[t]he States have consented" to be sued "pursuant to the plan of the Convention or to subsequent constitutional Amendment." *Id.* at 755. For instance, "[i]n

13

ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government." *Id.* And perhaps most relevant here, *Reich v. Collins*, 513 U.S. 106 (1994), held that "despite its immunity from suit in federal court, a State that holds out what plainly appears to be 'a clear and certain' postdeprivation remedy for taxes collected in violation of federal law" can be subject to suit in state court. *Id.* at 740.

Yet even assuming BAS meant to invoke that exception here, it would not change the analysis. The undisputed record here demonstrates that the Commissioner provided constitutionally sufficient notice before it proceeded with the challenged tax sale. So BAS cannot plausibly claim that Arkansas law has prevented it from vindicating its federal rights— only that it has required BAS, like any litigant, to present evidence of a viable legal claim to proceed. And nothing in the federal constitution suggests BAS is entitled to press claims that fail as a matter of federal law. *Cf. Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 380 (1990) ("A State may adopt neutral procedural rules to discourage frivolous litigation of all kinds, as long as those rules are not pre-empted by a valid federal law. A State may not, however, relieve congestion in its courts by declaring a whole category of federal claims to be frivolous. Until it has been proved that the claim has no merit, that judgment is not up to the States to make."). Indeed, far from "regularly . . . entertain[ing] analogous suits," our constitution expressly prohibits our courts from hearing suits against the State where there is no evidence the state has acted unlawfully. *See Haywood v. Drown*, 556 U.S. 729, 739–40 (2009) (finding Supremacy Clause violation where state law barred state courts of general jurisdiction from hearing certain suits based on content rather than

14

Appellate Case: 26-1635    Page: 21    Date Filed: 05/19/2026 Entry ID: 5641429

"concerns of power over the person and competence over the subject matter"). So we reject BAS's claim that the Supremacy Clause somehow entitles it to pursue meritless claims.

### III. *Conclusion*

Nothing in this case turns on the wisdom of the current notice statutes. Whether that current statutory scheme strikes the best cost-benefit balance, could be marginally improved, or could be tweaked to provide better options is beyond the purview of this case and is for the "legislature to resolve." *Standridge v. Fort Smith Pub. Schs.*, 2025 Ark. 42, at 11, 708 S.W.3d 773, 781. Instead, our role is limited to deciding whether the Commissioner's actions here were constitutionally sufficient. On this record, the undisputed facts show that the Commissioner's August 2021 notice—sent by certified mail to BAS's last known address—was reasonably calculated to inform BAS of the impending tax sale. BAS's claims therefore fail as a matter of law; BAS has not overcome sovereign immunity; and the Commissioner is entitled to summary judgment.

Reversed.

WEBB, J., concurs.

BAKER, C.J., concurring in part and dissenting in part.

HUDSON and WOMACK, JJ., dissent.

15